UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ANNE M. PRONTI,

Plaintiff,

DECISION AND ORDER

02-CV-6309L

v.

JO ANNE B. BARNHART, as Commissioner of the Social Security Administration,

Defendant.

---

CURTIS L. BALLARD,

Plaintiff,

03-CV-6090L

v.

JO ANNE B. BARNHART, as Commissioner of the Social Security Administration,

Defendant.

---

KIMOTHY ZIMMERMAN,

Plaintiff,

v.

03-CV-6664L

JO ANNE B. BARNHART, as Commissioner of the Social Security Administration,

Defendant.

---

## INTRODUCTION

These three cases, *Pronti v. Commissioner* (02-CV-6309L) ("*Pronti*"), *Ballard v. Commissioner* (03-CV-6090L) ("*Ballard*"), and *Zimmerman v. Commissioner* ("*Zimmerman"*) (03-CV-6664L), joined for purposes of this decision, have raised one of the most serious claims that a litigant can make: that the judge, in this case an administrative law judge, was biased against them. These plaintiffs, together with several other similarly situated plaintiffs, sought Social Security benefits. Their requests were initially denied. They appealed and had an administrative hearing before Administrative Law Judge ("ALJ") Franklin D. Russell. ALJ Russell denied relief in each case. Plaintiffs, as well as other claimants, appealed to this Court pursuant to 42 U.S.C. § 405(g) after the Commissioner issued her final decision.[1]

In addition to raising arguments on the merits, each plaintiff alleged that ALJ Russell was biased in general against claimants seeking Social Security benefits. Plaintiffs were represented by separate counsel, all of whom practiced on a regular basis before ALJ Russell.

In addition to proceeding under § 405(g) -- the normal vehicle for appealing adverse Social Security decisions -- plaintiffs also pleaded federal jurisdiction, pursuant to 28 U.S.C. § 1331, and mandamus jurisdiction, pursuant to 28 U.S.C. § 1361. Plaintiffs also sought relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02. The essence of these causes of action was that each plaintiff was denied his or her constitutional right to due process because ALJ Russell was biased.

---

[1] *See Silliman v. Barnhart*, 02-CV-6406, *Joslyn v. Barnhart*, 02-CV-6646, and *Perry v. Barnhart*, 03-CV-6170L.

On September 13, 2004, this Court issued a single Decision and Order in *Pronti* and *Ballard* remanding the cases to the Commissioner pursuant to the sixth sentence of 42 U.S.C. § 405(g) to take additional evidence regarding plaintiffs' claims of the general bias of ALJ Russell, make findings of fact, and issue a final Agency Decision on bias. *See Pronti v. Barnhart*, 339 F.Supp.2d 480, 497 (W.D.N.Y. 2004)("*Pronti I*").[2]

Prior to my Decision in *Pronti I*, plaintiffs' counsel had urged this Court to resolve the bias issue in the first instance and not remand the case. The Commissioner took an opposite tact, that I had no jurisdiction under § 405(g) or the other causes of action to consider the bias claim.

In *Pronti I*, familiarity with which is assumed, I discussed the serious allegations of bias and the respective positions of counsel. I determined that the proper remedy was to remand the case for the Commissioner to take additional evidence, 339 F. Supp.2d at 497-99, which is a familiar procedure in Social Security cases. Although I recognize that I could have considered the bias issue in the first instance on the federal question causes of action, I believed, on balance, that the better course was to develop a full record and, therefore, I remanded the case pursuant to sentence six of § 405(g).[3]

In *Pronti I*, I indicated that once the administrative record was "fully developed" and that the Commissioner made a decision "regarding ALJ Russell's alleged bias," this Court would review

---

[2] By Stipulation and Order dated July 7, 2005, the Court remanded *Zimmerman* pursuant to sentence six for further administrative proceedings for the same reason and under the same terms as in *Pronti* and *Ballard*.

[3] Five cases were discussed in *Pronti I*, only two of them, *Pronti* and *Ballard*, were remanded pursuant to sentence six. The other three cases, *Perry, Joslyn,* and *Silliman*, for reasons discussed in *Pronti I*, were remanded pursuant to sentence four for new hearings before a different ALJ.

the supplemental record to determine whether the Commissioner's decision, if adverse to plaintiffs, was supported by substantial evidence. 339 F. Supp.2d at 497.

This Court was advised prior to filing its decision in *Pronti I*, that the Commissioner had commenced an investigation into allegations about ALJ Russell pursuant to an internal procedure as set forth in 57 Fed. Reg. 49,186 (S.S.A. Oct. 30, 1992), entitled "Procedures Concerning Allegations of Bias or Misconduct by Administrative Law Judges," (hereinafter referred to as the "Interim Procedures"). That procedure, though, was not deemed to be a substitute for full compliance with this Court's § 405(g) remand. That point was made quite clear in *Pronti I*, 339 F. Supp.2d at 499.

After this Court's decision in *Pronti I*, more than a year elapsed and no decision on the remand had issued, although the Court heard anecdotal evidence that the Commissioner was conducting interviews and assembling evidence concerning ALJ Russell.

Perhaps because of what they believed to be inordinate delay in completing the remand or an outright refusal to do so, plaintiffs filed a joint motion requesting that this Court vacate the remand, restore their cases to its calendar, exercise jurisdiction over the due process claims and consider the bias issue *de novo*. That motion was filed on October 4, 2005, and the motion was made returnable on November 30, 2005. (*Pronti* Dkt. #27).

Perhaps it was just a serendipitous coincidence but on that same day, November 30, 2005, the Secretary issued a document entitled "In RE: Bias Allegations Against ALJ Franklin Russell - Final Agency Decision" (the "Agency Decision") (*Pronti* Dkt. #30). In this 28-page Agency Decision which, to say the least, is highly critical of ALJ Russell in many respects, the Commissioner determined that a number of claimants, including *Pronti* and *Ballard,* were denied

their rights to full and fair hearings based on the manner in which ALJ Russell decided their cases. The Commissioner, therefore, ordered new hearings before different ALJs in both *Pronti* and *Ballard* and a number of other cases that were discussed in the Agency Decision.

On February 16, 2006, after the Commissioner issued the Agency Decision, plaintiffs filed a second motion, this time seeking declaratory judgment on the pleadings, pursuant to 28 U.S.C. § 2201(a), that ALJ Russell is and was "generally biased" against all Social Security claimants. Plaintiffs ask the Court to determine that the Commissioner failed to provide full and fair hearings to *all* claimants, past and present, whose cases were decided by Russell. (*Pronti* Dkt. #34; *Ballard* Dkt. #19; *Zimmerman* Dkt. #21).

Most recently, on March 13, 2006, plaintiffs in *Pronti* and *Ballard* filed a motion for preliminary injunction seeking to enjoin the Commissioner from taking any further administrative action relative to their claims for disability benefits (including holding new hearings before different ALJs in accordance with the Agency Decision), until further Order of this Court and a determination regarding jurisdiction. (*Pronti* Dkt. #37; *Ballard* Dkt. #21).

**DISCUSSION**

Although plaintiffs have been granted entirely new hearings before a different, presumably unbiased ALJ, they remain unhappy with the administrative proceedings and urge this Court to take action. Plaintiffs are dissatisfied with the relief afforded to them in the administrative process; they object to the procedures utilized by the Commissioner to investigate the bias allegations, and they do not believe that the Commissioner's actions comply with this Court's remand order.

The issues presented here are unusual, perhaps because it is so rare that serious allegations of this type are lodged against a judicial officer. In spite of the serious allegations and the procedural issues, it is also important to remember the parameters of this Court's jurisdiction. It is too well known to require citation that federal courts are courts of limited jurisdiction. The power of federal courts to review final decisions in Social Security matters is also limited by statute. *See* 42 U.S.C. § 405(h). It is also, of course, important that litigants comply with mandates of the Court. In resolving these issues, I start with the Commissioner's investigation concerning ALJ Russell's bias, which concluded with the final Agency Decision on November 30, 2005.

## I. The Commissioner's Investigation Regarding Bias and the Agency Decision

The Commissioner's Agency Decision is the result of an investigation initiated by her in accordance with the Social Security Administration's ("SSA") Interim Procedures, after complaints of ALJ Russell's general bias were made by several attorneys, including those representing plaintiffs Pronti and Zimmerman.

In May 2003, the SSA's Acting Chief Administrative Law Judge directed the Regional Chief Administrative Law Judge for Region II, ALJ Steven Wright, to conduct an in-depth investigation into the complaints of ALJ Russell's bias and to report his findings and recommendations resulting from that investigation. ALJ Wright appointed Hearing Office Chief Administrative Law Judge for the Queens Hearing Office, David Z. Nisnewitz, to conduct the investigation.

ALJ Nisnewitz, with the assistance of three attorney advisors and a special projects officer, conducted a 15-month investigation that included interviews of ALJ Russell, the complaining attorneys, staff from the Syracuse Hearing Office (including Chief Administrative Law Judge John

Tarrant and attorney advisors who draft a significant number of ALJ Russell's decisions), and non-complaining attorneys who had a significant number of cases before ALJ Russell. (Agency Decision, at 4). The investigation also included a review of a random sample of approximately 50 cases decided by ALJ Russell. "The intent was to review cases objectively and determine whether any of the serious allegations against ALJ Russell had merit." (Agency Decision, at 6).

On September 20, 2004, at the conclusion of the investigation, ALJ Nisnewitz issued a report to ALJ Wright.[4] In accordance with the Interim Procedures, ALJ Nisnewitz's report was forwarded to the Associate Commissioner for Hearings and Appeals, A. Jacy Thurmond, who reviewed the report, determined the appropriate administrative action to take, and then issued (on behalf of the

---

[4] The report concluded that:

> The cases showed repeated instances where Judge Russell refused to accept objective evidence, test results, testimony, physician opinions and opinions from other experts; all to the detriment of the claimant before him. In several instances, the evidence clearly showed that a claimant met a listing. Judge Russell went out of his way to discount such evidence so that he could deny the claim. He regularly expresses his suspicion of claimants or of the evidence so that he could deny the claim. He questions claimants at length on minor or irrelevant discrepancies in the record. From this questioning, one gets the impression he is trying to catch the claimant in a lie. In his decision, in the way he handles treating physician and other expert opinions, and in his questioning, the overriding tone is one of suspicion.
>
> We recommend that Judge Russell, at a minimum, receive re-education in regard to his approach to deciding cases, the treating physician rule, bias, etc. We further recommend that if after such retraining, Judge Russell continued to decide cases in the same manner, the Agency should consider further action.

(Agency Decision, at 6-7; *see also* Affidavit of ALJ Nisnewitz, Agency Decision Ex. 5).

Commissioner) the SSA's Final Agency Decision on November 30, 2005, regarding the allegations against ALJ Russell.[5]

In the Agency Decision, the Commissioner made several specific findings and conclusions regarding the allegations of bias and ALJ Russell. First, the Commissioner found that the bias allegations made by several different complainants generally were consistent with one another. All complainants alleged that ALJ Russell was very critical of treating physicians and other medical opinions that were favorable to claimants, was much less critical of medical opinions that were unfavorable to claimants, improperly evaluated claimants' credibility, and held claimants to a standard of proof far higher than that required by the Social Security Act, regulations, and applicable guidelines. The investigation, therefore, focused primarily on these issues.

The Commissioner next found that the complainants' allegations were "credible" and were "corroborated" by the evidence elicited during ALJ Nisnewitz's investigation, interviews, and random-sampling case review.[6] (Agency Decision, at 26). The Commissioner then made the following conclusions:

> The intent of the agency's evaluation of attorney complaints and its own evaluation of a randomly selected sample of ALJ Russell's decisions as well as a review of ALJ Russell cases in which allegations of bias were made at the Appeals Council level was to determine if there were significant problems in the (sic) ALJ Russell's legal

---

[5] *See* Interim Procedures, 57 Fed. Reg. 49,186, 49,187 ("If the investigation supports a finding that bias or misconduct has occurred, the Associate Commissioner for Hearings and Appeals will determine, in consultation with the Chief Administrative Law Judge and the OHA Special Counsel, if necessary, the appropriate administrative action to be taken and her or she will take such action.").

[6] The Commissioner also concluded that the statistical reports relied upon by complainants confirmed that ALJ Russell issued fewer allowances than denials but, for numerous reasons set forth in the Agency Decision, were not themselves determinative of whether ALJ Russell held a bias against all disability claimants.

> analysis, case development and judicial demeanor. If problems were detected, the intent was to determine whether these problems evidenced a bias towards all, or a group, of claimants. Significant problems and errors, as set forth in the Findings, were discovered.
>
> After reviewing the Nisnewitz report and additional complaints, claimant files, court transcripts, relevant agency policy and regulatory and case law the agency finds that in the instances discussed above, ALJ Russell failed to follow SSA regulations, policies and procedures. Further, his explanations, admissions and rationale reveal some fundamental misinterpretations and misapplications of Social Security regulations, agency policies and procedures, and the vital role of the adjudicator in the administrative review process.
>
> It is apparent that his aforementioned failure to follow agency policies and procedures coupled with his frequently critical tone and contentious manner have deprived the claimants discussed above of full and fair hearings. The Agency takes seriously its duty to ensure that all claimants receive full and fair hearings.

The Commissioner pronounced what administrative action would be taken as a result of the investigation:

> Therefore, the agency will agree to voluntary remands of all pending district court cases in which ALJ Russell was the deciding official for a new hearing before a different ALJ.
>
> The agency will also remand both *Pronti* and *Ballard*, now pending at the Appeals Council, for a new hearing before a different ALJ. . . .
>
> In addition, the agency will take further actions, consistent with this opinion, at the administrative level.

(Agency Decision, at 27-28).

The Commissioner also granted all requests for review of less than fully favorable decisions rendered by ALJ Russell pending with the Appeals Council and remanded those cases for new hearings before different ALJs.

Further, the Syracuse Hearing office reassigned to different ALJs all requests for hearings pending before ALJ Russell. The Commissioner reported recently that ALJ Russell retired on June

28, 2006, and he is no longer working as an administrative law judge for the SSA. (*Pronti* Dkt. #41). In fact, it appears that he conducted no hearings after issuance of the Agency Decision on November 30, 2005.

After the Commissioner filed the November 30, 2005 Agency Decision, the parties continued to press this Court to resume jurisdiction and decide the bias issue. Because the Commissioner, up to that point, had *never* directly responded to the Court's scheduling order, requiring a response to plaintiffs' motion for the Court to resume jurisdiction, I issued another order (*Pronti* Dkt. #20) with five specific interrogatories directed to the Commissioner. The Commissioner responded by memorandum of law (*Pronti* Dkt. #38).

That memorandum set forth, from the Commissioner's perspective, what she did and/or what she failed to do relative the bias allegations. As articulated in that memorandum, the Commissioner's position is that it is still "premature" for this Court to resume jurisdiction because the Commissioner has not yet completed the "post-remand administrative proceedings regarding plaintiffs' claims for benefits under the Act." (*Pronti* Dkt. #38, p. 6).

After the Commissioner issued the Agency Decision on November 30, 2005, the Appeals Council issued orders vacating the Commissioner's final decisions in *Pronti* and *Ballard*, and remanded those cases to the Office of Hearings and Appeals for new hearings before different ALJs. (*Pronti* Dkt. #37, Exs 1, 2). In *Pronti*, no new hearing has been scheduled yet. In *Ballard*, it appears that a pre-hearing conference took place on May 10, 2006, but no other administrative action has been taken. In *Zimmerman*, a new hearing took place, and the new ALJ issued an unfavorable decision denying benefits on May 15, 2006.

## II. There is No Basis to Exercise Jurisdiction Over the Bias Claims

With this somewhat tortured procedural history, the Court must now decide what, if anything, to do concerning plaintiffs' pending motions and concerning plaintiffs' appeals from the denial of benefits.

As I held in *Pronti I*, the Court had reviewed these cases pursuant to its jurisdiction under 42 U.S.C. § 405(g). I declined in *Pronti I* to decide at that time whether the Court had mandamus or other jurisdiction to hear plaintiffs' Fifth Amendment due process claims. *See Pronti I*, 339 F.Supp.2d at 499. I decided that the better course was to remand the case to allow the Commissioner to develop the record concerning bias. I believe that the due process claims could have been heard in the district court, especially if the Commissioner failed to conduct a full and fair review of the bias issues.

In the present posture of the case, I find that the issue of bias has been adequately addressed by the Commissioner, and that there is no basis for the Court to exercise jurisdiction over plaintiffs' cases prior to a final determination on the merits regarding disability after new hearings.

These cases were remanded pursuant to the sixth sentence of § 405(g), which provides:

> The court may, … remand the case to the Commissioner of Social Security for further action by the Commissioner of Social Security, and it may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; and the Commissioner of Social Security shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm the Commissioner's findings of fact or the Commissioner's decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and, in any case in which the Commissioner has not made a decision fully favorable to the individual, a transcript of the additional record and testimony upon which the Commissioner's action in modifying or affirming was based.

When a case is remanded pursuant to sentence six, the Court retains jurisdiction and final judgment is not entered until "after postremand agency proceedings have been completed and their results filed with the court." *Shalala v. Schaefer*, 509 U.S. 292, 297 (1993). Further, it is only when postremand proceedings do not result in "a decision fully favorable to the [claimant]" that the Court need undertake any review of the additional findings of fact and decision.

At this juncture, I decline to review the Agency Decision regarding ALJ Russell's alleged bias under § 405(g). To do so would serve no useful purpose.[7] The Court's remand order in *Pronti I* was issued in September of 2004. The Commissioner is permitted to take any action on remand that is not inconsistent with the Court's remand order. *See Sullivan v. Hudson*, 490 U.S. 877, 886-87 (1989); *Mefford v. Gardner*, 383 F.2d 748, 758-59 (6th Cir. 1967) ("if the cause is remanded with specific directions, further proceedings . . . must be in substantial compliance with such directions; and if the cause is remanded for a specified purpose, any proceedings inconsistent therewith is error . . . ."); *see also Thompson v. Barnhart*, No. Civ.A. 05-395, 2006 WL 709795, *10-*11 (E.D.Pa. Mar. 15, 2006); 20 C.F.R. § 404.977(b) ("The administrative law judge [on remand] shall take any

---

[7] The Court, however, is not without authority to review the Agency Decision pursuant to its jurisdiction under § 405(g). The Commissioner argues that the Agency Decision "does not, itself, constitute the type of 'additional or modified findings of fact and decision' which would permit judicial review under the seventh sentence of 42 U.S.C. § 405(g)." (*Pronti* Dkt. #38). This is incorrect. The Court in *Pronti I* recognized its authority to review the Commissioner's findings of fact and final decision regarding ALJ Russell's alleged bias in order to determine whether they are supported by substantial evidence. *Pronti I*, 339 F.Supp.2d at 497 ("Once the administrative record is fully developed and the Commissioner makes findings of fact and issues a decision regarding ALJ Russell's alleged bias, the Court will review the supplemented administrative record and the Commissioner's findings of fact and final decision to determine whether they are supported by substantial evidence."). In addition, other courts have held that the district court has the authority pursuant to § 405(g) to review the Commissioner's findings regarding the alleged bias of an ALJ. *See Grant v. Shalala*, 989 F.2d 1332, 1346 (3d Cir.1993); *Small v. Barnhart*, 329 F.Supp.2d 1272 (N.D.Ala.2004).

action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order.").

The Commissioner has now taken additional evidence regarding the claims of plaintiffs Pronti and Ballard that reversal of the final decisions in their cases was required because of ALJ Russell's general bias. The Commissioner reversed the decisions denying benefits in *Pronti* and *Ballard* because the manner in which ALJ Russell adjudicated their cases denied plaintiffs of their rights to full and fair hearings.

In light of the favorable decision regarding the issues concerning ALJ Russell, there is no reason to delay the administrative proceedings any further. The claims for benefits in *Pronti* and *Ballard* have not been decided yet. Plaintiffs filed their claims over 7 years. Plaintiffs should have new hearings before different ALJs on the issue of disability as soon as possible. If plaintiffs' claims for benefits are denied after new hearings, the Court will review those determinations pursuant to its jurisdiction set forth in § 405(g). Until such time, however, there is no need for the Court to exercise jurisdiction, as there are no final "additional and modified findings of fact" ready for review regarding plaintiffs' claims. *See* 42 U.S.C. § 405(g).[8]

This Court has never adjudicated the merits of plaintiffs' appeals, and the record was not

---

[8] In *Zimmerman*, prior to issuance of the Commissioner's Agency Decision, the Appeals Council issued a partially favorable decision finding that plaintiff was disabled with an onset date of March 26, 1996, and remanding to a different ALJ the issue of plaintiff's disability before March 26, 1996. (*Zimmerman*, Dkt. #23, Ex.2). On May 15, 2006, the new ALJ issued a decision denying Zimmerman's claim for benefits before March 26, 1996. In accordance with 20 C.F.R. § 404.984, Zimmerman elected not to file written exceptions to the decision. Assuming the Appeals Council did not review the decision on its own motion within sixty days (on or before July 15, 2006), the ALJ's decision became the final decision of the Commissioner after remand, and now may be reviewed by the Court in accordance with the seventh sentence of § 405(g).

such that I could reverse and remand for the immediate calculation and payment of benefits. In this posture, the relief already afforded by the Commissioner is complete relief, in the sense that this Court could do no more. It makes little sense to retain jurisdiction, conduct further proceedings at the end of which plaintiffs would be in no better position except that they would have suffered more delay.

I do share plaintiffs' concerns, however, that the Commissioner did not comply with this Court's remand order and its instructions to the Commissioner. The Commissioner is not free to pick and choose whether to comply fully with the Court's directives on remand. One could view what the Commissioner did here as precisely that. The Commissioner clearly did not follow with precision the Court's instructions. She has made no specific, direct findings on the issue presented: whether ALJ Russell had a general bias or not. This Court could certainly send these cases back until the Agency fully complies. Or, because of the highly critical nature of the Agency Decision, together with the numerous exhibits attached thereto, this Court could have taken further action itself if necessary.

But, I do not believe that plaintiffs have been harmed as a result of the Commissioner's evasive tactics because the Commissioner did conclude that ALJ Russell deprived plaintiffs in *Pronti* and *Ballard* of full and fair hearings, and has already held a new hearing in *Zimmerman*. Moreover, it cannot be said that the administrative action taken on remand is inconsistent with the remand order or does not substantially comply with the Court's mandate. *See Thompson*, 2006 WL 709795, at *11; *cf. Ischay v. Barnhart*, 383 F.Supp.2d 1199 (C.D.Cal. 2005) ("The rule of mandate requires that, on remand, the lower court's actions must be consistent with both the letter and the spirit of the higher court's decision.").

Moreover, plaintiffs cannot attack the processes employed by the Commissioner pursuant to the Interim Procedures in investigating their claims. I agree with plaintiffs that there are legitimate questions that could be raised regarding the manner in which the Commissioner handled their complaints of bias[9] and the process afforded them during the investigation.[10] Plaintiffs, however, make no claim that they were unable to adequately present their evidence of bias to the Commissioner. In addition, plaintiffs ultimately have not been harmed by the manner in which the investigation was conducted. There is no reason, therefore, for the Court to rule on the sufficiency of the process of the investigation, or whether the Commissioner committed legal error by not making a specific finding that ALJ Russell was or was not biased.

---

[9] For instance, the remedy plaintiff Pronti has received comes after a long and tortured process. Pronti applied for SSI benefits on April 27, 1999. The hearing before ALJ Russell was held November 29, 2000, and he issued a decision denying benefits on March 5, 2001. The Appeals Council denied plaintiff's request for review on April 9, 2002. This action was commenced on June 10, 2002, and the issue of bias was raised then. Plaintiff's Amended Complaint was filed October 7, 2002, adding additional bases for jurisdiction, including 28 U.S.C. §§ 1331 and 1361, and seeking relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202. In May 2003, the Commissioner began the investigation into plaintiff's complaints about ALJ Russell. Finally, in November 2005, the Commissioner issued the Agency Decision. Plaintiff Pronti was granted a new hearing before a different ALJ in February 2006, almost five years after she was denied a full and fair hearing by ALJ Russell, and almost seven years before she first applied for benefits.

[10] In *Grant*, the district court remanded the case for further administrative proceedings on the claims of bias, after the Commissioner had completed an investigation into the claims of bias and found them to be without merit, because plaintiffs did not receive a "full and fair administrative hearing" on the issue. The Court reasoned that, "[t]he Secretary's findings of fact from the hearing are defective because they were rendered in the absence of argument and evidence presented by Plaintiffs on their claims of general bias." *Grant*, 111 F.Supp.2d at 558. Here, plaintiffs did participate, to some degree, in the investigation by submitting evidence and through interviews of their counsel. However, the investigation was not conducted using the formalities normally employed during other SSA administrative hearings. For instance, the interviews conducted by the investigative team were not formally transcribed or recorded, no sworn testimony was taken, plaintiffs were not privy to the evidence educed during the investigation, and they were not given an opportunity to make arguments based on the entire investigative record.

Further, there is no legal basis upon which to consider the issue of bias in the context of the plaintiffs' alternative due process claims based on federal question or mandamus jurisdiction. The Commissioner has adequately considered plaintiffs' allegations against ALJ Russell. Plaintiffs have already received the relief that they could receive as a result of litigating those claims.[11] That is, they have already been granted new hearings before different ALJs based upon ALJ Russell's "fundamental misinterpretations and misapplications of Social Security regulations, agency policies and procedures, and the vital role of the adjudicator in the administrative review process." (Agency Decision, at 27). This Court could do no more for these plaintiffs.

In addition, as the case now stands, I conclude that there is no case or controversy ripe for determination as to these plaintiffs that would justify the declaratory relief plaintiffs seek. The Declaratory Judgment Act, 28 U.S.C. § 2201, provides in subdivision (a) that:

> In a case of actual controversy within its jurisdiction, … any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

In order to be entitled to relief under the Act, there must be an actual controversy that is ripe for determination. Whether there is "an actual controversy" depends on "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory

---

[11] In addition, at least as to plaintiff Pronti, there is an issue regarding whether she waived her right to complain that the Commissioner violated her due process right to have her claim adjudicated by an impartial decision-maker when, on April 17, 2003, she declined the Commissioner's offer to remand her case to a different ALJ for further administrative proceedings. It hardly seems just for plaintiff Pronti to decline that offer of remand but still assert, three years later, that the Commissioner violated her Fifth Amendment due process rights by denying her a fair hearing.

judgment." *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941); *see also Duane Reade, Inc. v. St. Paul Fire and Marine Ins. Co.*, 411 F.3d 384, 388 (2d Cir.2005).

"A controversy ceases to be 'real and immediate' when 'the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.'" *Kidder, Peabody & Co., Inc. v. Maxus Energy Corp.*, 925 F.2d 556, 563 (2d Cir. 1991) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)). The Supreme Court has emphasized that "[t]he disagreement must not be nebulous or contingent but must have taken a fixed and final shape so that a court can see what legal issues it is deciding, what effect its decision will have on the adversaries, and some useful purpose to be achieved in deciding them." *Public Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 244 (1952).

Here, a declaratory judgment by the Court that ALJ Russell holds a general bias against all claimants would serve no usual purpose in clarifying or settling the legal issues involved in these particular cases, and would not finalize any controversy between plaintiffs and the Commissioner. *See Dow Jones & Co., Inc. v. Harrods Ltd.,* 346 F.3d 357, 359 (2d Cir. 2003). Although the Commissioner did not make an explicit finding regarding "general bias," a plain reading of the Agency Decision clearly shows that it is favorable to plaintiffs. The Commissioner found plaintiffs' complaints about ALJ Russell "credible" and "corroborated" by evidence developed during the 15-month investigation. The Commissioner also determined that ALJ Russell failed to follow agency policies, procedures, regulations, and even the spirit of the Act. The Commissioner concluded that ALJ Russell misunderstood the role of the adjudicator in the administrative review process.

Moreover, ALJ Russell is no longer acting as an administrative law judge in Social Security cases, and has since retired from the SSA. There is no need, then, to "finalize the controversy [about his alleged bias] and offer relief from uncertainty." *Dow Jones & Co.*, 346 F.3d at 359.

As to these plaintiffs, then, the issue as to ALJ Russell's general bias is moot. *Catanzano v.*

*Wing*, 277 F.3d 99, 107 (2d Cir.2001) ("When 'it can be said with assurance that there is no reasonable expectation that the alleged violation will recur, [and] interim relief or events have completely and irrevocably eradicated the effects of the alleged violation,' the issue is moot.") (quoting *United States County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)).

Nor can the Court make a declaration as to the rights of other claimants not parties to these cases. I cannot, as plaintiffs request, declare as a matter of law that ALJ Russell holds a general bias, even if I believed that there was no other conclusion to be drawn from the Agency Decision. Plaintiffs have no ability to seek relief pursuant to the Declaratory Judgment Act on behalf of *all* claimants who had their disability cases decided by ALJ Russell because they "lack a legally cognizable interest in the outcome." *Kidder, Peabody & Co.*, 925 F.2d at 563.

Federal courts are, of course, courts of limited jurisdiction and are not charged with rendering advisory opinions concerning non-parties. *S. Jackson & Son, Inc. v. Coffee, Sugar & Cocoa Exch., Inc.*, 24 F.3d 427, 432 (2d Cir. 1994) ( "It is apparent that the declaratory relief sought by [plaintiff] does not carry any implications for practical enforcement upon the parties.… Such a declaration seemingly would verge on the status of an advisory opinion, which, of course, no federal court is empowered to deliver.").

## CONCLUSION

In *Pronti v. Commissioner*, 02-CV-6309L, plaintiff's motion to restore jurisdiction to the Court and for discovery (Dkt. #25), motion for declaratory relief (Dkt. #34), and motion for preliminary injunction (Dkt. #37), are DENIED. The Commissioner's motions for an extension of time (Dkt. #28 and Dkt. #29) are TERMINATED AS MOOT.

In *Ballard v. Commissioner*, 03-CV-6090L, plaintiff's motion to restore jurisdiction to the

Court and for discovery (Dkts. ##11 and 12), motion for declaratory relief (Dkt. #19), and motion for preliminary injunction (Dkt. #21), are DENIED. The Commissioner's motion for an extension of time (Dkt. #15) is TERMINATED AS MOOT.

In *Zimmerman v. Commissioner*,[12] 03-CV-6664L, plaintiff's motion to restore jurisdiction to the Court and for discovery (Dkt. #13), and motion for declaratory relief (Dkt. #21), are DENIED. The Commissioner's motion for an extension of time (Dkt. #17) is TERMINATED AS MOOT.

IT IS SO ORDERED.

DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
August 3, 2006.

[12] In *Zimmerman*, the parties are directed to inform the Court regarding the status of the administrative proceedings taken with respect to the ALJ's May 15, 2006 decision denying plaintiff's claim for benefits for the period before March 26, 1996. If the final decision of the Commissioner is ready to be reviewed by this Court, the Commissioner is directed to contact the Court so that a schedule may be set for the filing of the additional and modified findings of fact and final decision, and a transcript of the additional record and testimony upon which the Commissioner's decision is based, as well as motions for judgment on the pleadings.